32983. ABERCROMBIE *et al v.* FORD MOTOR CO. *et al.*

DECIDED MAY 2, 1950. REHEARING DENIED JUNE 7, 1950.

*Jerome A. Cooper, Poole, Pearce & Hall, J. R. Goldthwaite Jr.,* for plaintiffs in error.

*MacDougald, Troutman, Sams & Schroder, Clifford Walker, J. Benton Evans,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Under the provisions of § 54-619 of the Code (Ann. Supp.), the aggrieved party may as a matter of right petition the superior court for review of the decision of the board of review within 10 days after such decision has become final. Also, under the provisions of this statute (Ga. L. 1937, p. 806, 818) any judicial proceeding under which the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the superior court shall be confined to questions of law. It follows that where the application for review filed with the superior court meets all the provisions of the law it is not subject to be dismissed. To hold that a petition for review of the decision of the board of review to the superior court is subject to demurrer

on the ground, for instance, that such decision is contrary to law, and is contrary to the evidence, would have the effect of denying the aggrieved party the right of appeal to the superior court which is provided for as a matter of right under the act providing for such appeal. The employer in the instant case, according to its petition, contends just that; it also points out other reasons why, as it contends, the judgment of the board of review is erroneous and should be reversed. In order to determine these questions it was necessary for the trial court to examine the evidence upon which the findings of fact of the board of review were predicated. We think that a demurrer or motion to dismiss is an improper attack on the petition for review filed with the superior court which in effect is an appeal from the board of review and under which the findings of the board of review as to the facts are conclusive upon the superior court if supported by evidence and in the absence of fraud, where such petition meets all the requirements of law providing therefor. The trial court did not err in overruling the demurrer and motion to dismiss the petition of the employer.

 Section 54-610(d) of the Code (Ann. Supp.) provides as follows: "An individual shall be disqualified for benefits. . . . (d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: Provided, that this subsection shall not apply if it is shown to the satisfaction of the Commissioner that—(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute: Provided, that if in any case separate branches of work, which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory establishment, or other premises: and Pro-

vided, further, that when a stoppage of work due to a labor dispute ceases and operations are resumed at the factory, establishment, or other premises at which he is or was last employed, but he has not been restored to such last employment, his disqualification for benefits under this subsection shall be deemed to have ceased at such time as the Commissioner shall determine such stoppage of work to have ceased and such operations to have been resumed."

The declaration of State policy in regard to the Unemployment Compensation Law is found in Code (Ann. Supp.) § 54-602 (Section 2, Ga. L. 1937, p. 807), which declares that the legislation is designed to lighten the burden which now so often falls with crushing force upon the unemployed worker or his family, and to achieve protection against this greatest hazard of our economic life. In *Young v. Bureau of Unemployment Compensation*, 63 *Ga. App.* 130 (10 S. E. 2d, 412), at page 135, it was stated: "The courts, as well as the administrator of the unemployment law, in construing and applying the provisions of such law must liberally construe and apply such law in the light of the public policy of this State, as declared in section 2 of the act. The courts shall be guided by the fact that the unemployment-compensation law is intended to provide some income for persons who are, without fault of their own, temporarily out of employment." Statutes such as this, remedial in character, must be so construed as to carry into effect the beneficial provisions of the act. See *U. S. Fidelity & Guaranty Co. v. O'Byrne*, 61 *Ga. App.* 806 (7 S. E. 2d, 689), a workmen's compensation case.

Thus construed, certainly, the General Assembly intended by § 54-610(d) of the Code (Ann. Supp.) to disqualify from the benefits of the unemployment compensation provided for by the act any worker for any week with respect to which his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed and this factory, establishment, or other premises relate to the *place* where the employee is thus engaged, that is, the geographical location of the factory, establishment, or other premises. See *M. A. Ferst, Ltd., v. Huiet*, 78 *Ga. App.* 855 (52 S. E. 2d, 336),

at page 858; Department of Industrial Relations *v.* Tomlinson, 251 Ala. 144 (36 So. 2d, 496). It follows that the claimants herein who were notified by the employer not to come to work at the Hapeville plant because, due to a strike at the Michigan plant, there were no parts in Hapeville to be assembled, did not become disqualified for benefits by reason of such labor dispute at the Michigan factory, establishment or other premises, and since there was no labor dispute such as would disqualify the claimants under § 54-610 (d) of the Code (Ann. Supp.), the exclusionary provisions hereinbefore quoted do not apply and the fact that such employees were directly interested in the labor dispute in Michigan to the extent that the outcome of the dispute resulted in better working conditions for them is immaterial. The integration of the employer, engaging in its main purpose of the manufacture and sale of automobiles, and in furtherance thereof maintaining a manufacturing plant for automobile parts in Michigan and a plant in Georgia where these parts are assembled, is not such as authorizes or requires this court to construe the Michigan plant and the Georgia plant to be the same factory, establishment or other premises. See Tucker *v.* American Smelting &c. Co. (Md.) 55 Atl. 2d, 692; General Motors *v.* Mulquin, 134 Conn. 118 (55 Atl. 2d, 732); Walgreen Co. *v.* Murphy, 386 Ill. 32 (53 N. E. 2d, 390); Ford Motor Co. *v.* New Jersey Dept. of Labor & Industry (decided March 6, 1950, N. J. Superior Court, Appellate Division.)

■ Section 54-610 (a) provides in part as follows: "An individual shall be disqualified from benefits. . . (a) For the week or fraction thereof in which he has left work voluntarily without good cause connected with his most recent work." As hereinbefore pointed out, the employer contends that the claimants left their employment at the Hapeville plant voluntarily without good cause in that their unemployment came about through the authorized acts of their agent, the International U.A.W.-C.I.O. by its authorization of the strike in Michigan. The applicable provisions of the constitution of the International Union U.A.W.-C.I.O. discloses substantially that a local union only has the power to vote a strike and such a strike, when so voted, can under no circumstances extend beyond such local. Before such a strike can become effective, it must be authorized

by the International Union. Had the members of the local union at Hapeville desired to strike they could have so voted, but the strike would not have become effective until authorized by the International Union. Under no circumstances could the Hapeville union with or without the aid, cooperation or authority of the International Union, bring about a strike in the Michigan plant. That could only be instituted by the local union there, as indeed it was. However, prevention of that strike was wholly beyond the power of the Hapeville union. The constitution of the International Union provides that in cases where there are a number of locals involved in negotiations and bargaining with a major corporation or an association of corporations, the International Executive Board shall set up an intra-corporate council. Such locals so involved shall be members and shall participate through duly elected delegates. When the major corporation or association has widely scattered branches, the intra-corporate council shall set up sub-corporate councils. According to the evidence, no representative of the Hapeville local ever participated personally or through delegates in negotiations leading to the strike in Michigan, or to the settlement of it. The tenor of the constitution of the International Union under which both the Hapeville and the Detroit locals operated, as well as the contract between the International union and the members, is that the International Union is the agent for its individual members, by and through all its organizations, including its local unions, to bargain collectively with employers and to approve strikes where the same are voted by local unions. The union therefore is the agent of the individual employees to bring about settlement of labor disputes where they exist between the employer and such employees. Neither under the constitution or the contract, nor under the two construed together, can it reasonably be said that the International Union is the agent of the employees belonging to a local union to act in the settlement of a labor dispute at a factory, establishment or other premises of the employer where no such labor dispute exists. The labor dispute here existed in the Michigan plant. There being such a dispute there, the International Union was the agent of the members of the local union there to negotiate for a settlement of such dispute. There being no labor dispute

at Hapeville, there was no action which the agent could take on behalf of the principal in this connection. Section 4-101 of the Code of Georgia provides as follows: "The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." Here the Hapeville employees never authorized the International Union to act as their agent in connection with any labor dispute, nor did they subsequently ratify any of those acts. Beyond the scope of his agency, a principal is not bound by the acts of the agent. *Wright* v. *Ga. R. & Banking Co.*, 34 *Ga.* 330 (2). Where an agent attempts to act for two parties, the effect of his acts may be avoided by the principal when such dual agency is without his full knowledge and consent. *Fort Valley Coca-Cola Bottling Co.* v. *Lumbermen's Mutual Casualty Co.*, 69 *Ga. App.* 120 (4) (24 S. E. 2d, 846). It follows that, inasmuch as the evidence conclusively shows that both the employees at Hapeville and the employer wanted the work to continue, the unemployment of the claimants was involuntary and they are not disqualified from benefits under the provisions of § 54-610(a) of the Code (Ann. Supp.)

One of the cases relied upon by counsel for the employer is Prentice *v.* Unemployment Compensation Board of Review, 161 Penn. Super. 630 (56 Atl. 2d, 295). Although this is a Pennsylvania case and not binding on this court, it would be persuasive authority were it not distinguishable in many respects. There the court was construing a provision of the Pennsylvania statute to the effect that an employee shall be ineligible for compensation for any act "in which his unemployment is due to a voluntary cessation of work resulting from an industrial dispute at the factory, establishment or other premises in which he was last employed." Although the claimant in that case was not a member of the striking union, the strike was in the same place of employment in which he was employed. The court there applied the law of agency and said that the United Mine Workers Union was the agent of the employee and that its action in connection with the strike rendered his unemployment voluntary on his part. The judge in that case stressed his acquiescence in not protesting the action of the union and in remaining away

from his place of employment until directed to return by the union. The applicable provisions of the constitution of the United Mine Workers Union is not set out and we do not know what these provisions might have been. In the case at bar, under the constitution of the International Union, as well as its contract with the employer, the Hapeville employees were in no position to protest the action of the union and they returned to work when directed to do so by the employer. Under the record here, the International Union was agent for the members of the union in Michigan and also agent for the employees and members of the union in Georgia. However, it was not the agent except to do certain things as set out in the constitution and the contract. In connection with the labor dispute, it was acting solely as agent for the members of the union in Michigan. It so happened that what it did for the employees in Michigan was in conflict with the wishes and desires of the members of the union in Georgia, where the undisputed evidence shows that both employers and employees wanted to continue to work and were satisfied. Where there is such a conflict between the interests of principals, the rule is that the principal is not bound unless he has assented to or ratified the act.

The statutes which we are required to construe to reach our decision in this case are plain and unambiguous. A different decision from that reached here would require the court to legislate into the law something that the legislature has not seen fit to put there. It is conceivable that under the present law as enacted by the legislature, hardships might result on both sides. We can see where labor unions might bring about a stoppage of work by strikes conducted elsewhere through a strained construction of the labor contract. On the other hand, it is equally plausible for employers to likewise bring about work stoppages through unreasonable constructions of labor contracts that will result in strikes on the part of the employees in self-defense. However, if these deficiencies in the law are to be guarded against, it must be by legislative enactment and not judicial decree.

■ The facts found by the appeals tribunal and adopted by the board of review requiring a finding that the claimants herein

are eligible for compensation benefits, the judgment of the superior court reversing the board of review so holding is error.

*Judgment reversed. MacIntyre, P.J., and Felton, J., concur. Gardner, J., disqualified.*