HARRY J. BENNETT, *et al.*

*v.*

M. H. HIX, *Clerk, etc.*, BOARD OF REVIEW OF WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY, *Respondents* and HOMER LAUGHLIN CHINA COMPANY, *a Corporation, Petitioner*

(No. 10536)

W. J. CLINE, *et al.*

*v.*

M. H. HIX, *Clerk, etc.*, BOARD OF REVIEW OF WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY, *Respondents* and THE EDWIN M. KNOWLES CHINA COMPANY, *a Corporation, Petitioner*

(No. 10550)

IRMA HARMER, *et al., Petitioners*

*v.*

M. H. HIX, *Clerk, etc.*, BOARD OF REVIEW OF WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY, and THE TAYLOR, SMITH & TAYLOR COMPANY, *a Corporation*

(No. 10552)

Submitted September 23, 1953. Decided December 15, 1953.

*Dayton, Campbell & Love, Paul, Lawrence & Rock, Thomas W. Moses,* for petitioners in Nos. 10536 and 10550.

*Perry S. Poffenbarger, James G. Jeter, Jr.,* for petitioners in No. 10552.

*Perry S. Poffenbarger, James G. Jeter, Jr.,* for respondents in Nos. 10536 and 10550.

*Dayton, Campbell & Love, Paul, Lawrence & Rock, Thomas W. Moses,* for respondent Taylor, Smith & Taylor Co. in No. 10552.

*Leo Loeb, Franklin W. Kern,* for respondent *C. S. Davis,* Director of Employment Security in Nos. 10536, 10550 and 10552.

LOVINS, JUDGE:

This Court granted three writs of certiorari to review three judgments rendered by the Circuit Court of Kanawha County. The proceedings on those writs were consolidated for hearing in this Court.

H. J. Bennett and other employees of the Homer Laughlin China Company, a corporation, similarly situated, applied for unemployment compensation benefits. W. J. Cline and other employees of The Edwin M. Knowles China Company, a corporation, similarly situated, also made application for unemployment compensation benefits. Irma Harmer and other employees of The Taylor, Smith & Taylor Company, a corporation, made application for unemployment compensation benefits. Where the context will permit, all of the above named persons claiming unemployment benefits will be designated hereinafter as claimants, and the employers will be designated respectively as "Laughlin Company," "Knowles Company", and "Taylor Company".

The usual procedure provided for in the unemployment compensation law was followed until the board of review was reached. That board, upon hearing the claims, denied compensation benefits in the three proceedings. The proceedings were thereafter reviewed by the Circuit Court of Kanawha County, in accordance with this Court's opinion in the case of *Wilson* v. *Hix,* 136 W. Va. 59, 65 S. E. 2d, 717. Upon hearing in the Circuit Court of Kanawha County, the decisions of the board of review were

reversed in the proceedings of Harry J. Bennett, et al., against The Homer Laughlin China Co., and W. J. Cline, et al., against The Edwin M. Knowles China Co. In the proceeding of Irma Harmer, et al., against Taylor, Smith & Taylor Co., the order of the board of review was affirmed.

The action of the Circuit Court of Kanawha County resulted in granting unemployment compensation to the group of claimants employed by the Laughlin Company and the Knowles Company; and in denying unemployment compensation to the group of claimants employed by the Taylor Company.

Upon the petitions of Laughlin and Knowles Company, this Court granted writs of certiorari, and upon the petition of Irma Harmer and others, a writ of certiorari was likewise granted, to review the judgments of the Circuit Court of Kanawha County.

The parties to these proceedings and the director of employment security stipulated substantially as follows: That the facts set forth in the memoranda made by the board of review are correct; that such facts should be printed as the record in each case. It was further stipulated by the above mentioned persons that in lieu of printing the entire record in these proceedings, the memoranda opinions of the Judge of the Circuit Court of Kanawha County, West Virginia, and the orders entered by that Court, should be printed, in addition to the memoranda made by the board of review. It was also stipulated that all other parts of the record be deleted unless the printing thereof should be specifically requested by counsel representing the claimants, the employers and the Department of Employment Security. The stipulation provided that the memoranda of opinions of the Judge of the Circuit Court of Kanawha County are identical in the three proceedings.

There are some facts common to all three proceedings, which are as follows: The Laughlin, the Knowles Com-

pany and the Taylor Company are manufacturers of pottery. Through their associations, they dealt with the representatives of the employees' union. By an agreement executed in November, 1944, and kept current by annual supplemental agreements, it was provided that certain employees should have an annual two weeks vacation with pay; that others should have an annual vacation of one week with pay, and that certain other employees should have a vacation without pay. Among other provisions of the contract are the following pertinent provisions: "3. The Employer shall decide whether all vacations by all qualified employees shall be taken at one time or whether they shall be staggered over the agreed-on vacation period. 4. Where vacations are to be staggered, every effort shall be made to grant the vacation to each individual at the time most suitable to him. Where the number of applications for a single week is so great that production plans would be seriously upset if all were granted, then those employees who may take that week shall be determined by length of service. 7. The company shall provide one week's vacation with pay to all employees with one year's service. 12. The vacation season shall begin June 1st and end December 31st."

The contracts between the employers and their employees are identical. The absence of those employees entitled to two weeks vacation with pay, they being highly skilled, necessitated the closing of the plants of the Laughlin Company, the Knowles Company and the Taylor Company, and the cessation of operations in all three plants at the times hereafter mentioned.

The Laughlin Company, prior to the year, 1949, had granted 'staggered' vacations, thus keeping its plant in operation. The Laughlin Company, as disclosed by this record, gained the impression that a vacation should be given to all of their employees at one time, which would require the closing of their plant during such time. The decision to take a mass vacation was communicated to the shop committee of the employees. The plant superintend-

ent of the Laughlin Company met the representatives of the employees and discussed the matter of a vacation. No criticism was voiced by the employees. The Laughlin Company published a notice on May 21, 1949, to the effect that work would be suspended on July 1, 1949, for a two weeks vacation period. In accordance with the notice, the Laughlin Company's plant ceased operation for two weeks at some time between July 1st and July 17th, 1949; the exact time not being clearly shown in the record.

As of July 1, 1949, the Laughlin Company had 3425 employees. 1362 of their employees were entitled to two weeks vacation with pay; 1374 of their employees were entitled to one week vacation with pay and 689 of their employees were entitled to a vacation without pay.

In this proceeding, those receiving two weeks vacation are not involved. The employees receiving one week vacation with pay claim one weeks unemployment compensation benefits. The employees receiving no paid vacation claim two weeks similar benefits.

In the proceeding concerning the Knowles Company, the facts are not substantially different from those in the Laughlin Company. For some time, prior to the year, 1949, it had been the practice of the Knowles Company to give a mass vacation to their employees. A notice was published by the Knowles Company that the vacation period for their employees would extend from July 3rd through July 16th, 1949, and in accordance with such notice, the plant ceased operation during that period. No complaint or unfavorable reaction from the employees was made or manifested.

At the commencement of the vacation period, the Knowles Company employed 1872 persons. Approximately 401 of those employees were entitled to receive two weeks vacation with pay, and are not involved in this proceeding. 355 of the Knowles Company's employees were entitled to receive vacation with pay for one week; and approximately 113 of that Company's employees were not entitled

to receive any paid vacation. The last two groups are claimants in this proceeding.

In the proceeding in which the employees of the Taylor Company claimed unemployment compensation, the record shows that the representatives of the Taylor Company and the shop committee, representing the employees, at a meeting held prior to July 4, 1949, agreed that there should be a vacation period for all employees, commencing on July 4th and ending on July 17th, 1949. The number of persons employed by the Taylor Company is not clearly shown in the record, but according to the petition filed by Irma Harmer and other claimants, 455 of the employees of the Taylor Company who were rendered idle by such agreement, comprise the claimants in this proceeding. The employees of the Taylor Company who received two weeks vacation with pay are not included in the group of claimants. The employees who received one week vacation with pay and those who received no vacation with pay constitute the group of claimants in the Taylor Company proceeding.

The Laughlin and Knowles Companies contend that the Circuit Court of Kanawha County erred: (1) In holding claimants in those two proceedings eligible, without disqualification, for unemployment benefits during the vacation period that had been agreed upon by the employers and the unions representing claimants, (2) In charging the accounts of the Laughlin and Knowles Companies with such benefits.

The claimants in the Taylor Company proceeding contend that the Circuit Court of Kanawha County erred in denying them compensation benefits, as not being qualified, under the collective bargaining agreement and the subsequent agreement fixing the time of a mass vacation.

The board of review had held that the first paragraph of Section 4 and Sub-section 8, of Section 4, Article 6, Chapter 135, Acts of the Legislature, 1949, Regular Session, did not apply to the three claims made by the three

groups of employees. But the Circuit Court of Kanawha County held that such statute did apply and that under the provisions of that statute, the employees of the Laughlin and Knowles Companies were involuntary rendered idle by the closing of the plants of their companies and were therefore entitled to compensation benefits. The Circuit Court of Kanawha County decided to the contrary in the Taylor Company proceeding, on the ground that after consulting with the representatives of its employees, a vacation period was specified and that such vacation should be taken by all of the employees; that in accordance with such agreement, the vacation was taken en masse, rather than staggered; and that the action by the Taylor Company and the representatives of those employees resulted in voluntary idleness on the part of the employees of that company, thus disqualifying them from any unemployment compensation benefits.

It is to be noted that in the matter of the claims of the employees of the Taylor Company, the trial examiner held such employees disqualified. The board of review in that case reversed the decisions of the trial examiner, but contrary to such reversal, held that those employees were disqualified because they were voluntarily idle.

These cases present a question of first impression in this jurisdiction, but we are not without precedent from other jurisdictions.

In the case of *Mattey* v. *Unemployment Compensation Board of Review* (Pa. Superior Court) 63 A. 2d, 429, the court held that an employee who was on vacation without pay, pursuant to an agreement between his employer and the union of which he was a member, and who returned to his existing employment, was not entitled to unemployment benefits. A similar result was reached in the case of *Moen* v. *Director of Division of Employment Security,* (Mass.) 85 N. E. 2d 779. *In Re Buffelen Lumber & Mfg. Co.* (Wash.) 201 P. 2d 194, unemployment compensation benefits were denied on a state of facts somewhat similar to that in the instant case. The statute however, con-

sidered in the *Buffelen* case is different from the pertinent statute in the instant case. See *Jackson* v. *Minneapolis-Honeywell Regulator Co.* (Minn.) 47 N. W. 2d 449. The Circuit Court of Kanawha County, following the *Mattey* and kindred cases, denied compensation to employees of the *Paden City Pottery Company* on May 27, 1949, not reported and published.

Since the *Paden City Pottery Company* case, decided by the Circuit Court of Kanawha County, a statute was enacted by the legislature of this state, February 25, 1949, effective June 30, 1949, the pertinent portion reading as follows: "Upon the determination of the facts by the director, an individual shall be disqualified for benefits: * * * For each week in which he is unemployed because of his request or that of his duly authorized agent for a vacation period at a specified time that would leave the employer no other alternative but to suspend operations." The first paragraph of Section 4 and Sub-section 8, of Section 4, Article 6, Chapter 135, Acts of the Legislature, 1949, Regular Session.

The above quoted statute is without ambiguity and admits of no construction. *Kelley & Moyers* v. *Bowman,* 68 W. Va. 49, 69 S. E. 456. See *State* v. *Patachas,* 96 W. Va. 203, 122 S. E. 545. The application of a plain statute however, is a proper judicial function.

The liability to pay and the right to receive unemployment compensation benefits rests upon the Unemployment Compensation Act. And such Act, being remedial in nature, its beneficent provisions should be liberally applied. *Tennessee, Coal, Iron & R. Co.* v. *Martin* (Ala.) 36 So. 2d 547; *Florida Industrial Commission* v. *Growers Equipment Co.* (Fla.) 12 So. 2d 889; *Abercrombie* v. *Ford Motor Co.* (Ga. App.) 59 S. E. 2d 664; *Maine U. Comp. Com'n.* v. *Androscoggin, Junior, Inc.* (Me.) 16 A. 2d 252; *Harris* v. *Egan* (Conn.) 60 A. 2d 922.

An examination of the unemployment compensation law shows that it has exclusionary provisions which deny

the payment of compensation to those voluntarily unemployed. Sub-section 8, idem, is an exclusionary provision and calls for strict application. *Tennessee, Coal, Iron & R. Co.* v. *Martin, supra; Commonwealth Life & Acc. Ins. Co.* v. *Board of Review* (Ill.) 111 N. E. 2d 345; *California Employment Stab. Com'n.* v. *Morris* (Cal. App.) 165 P. 2d 503; *Nordling* v. *Ford Motor Co.* (Minn.) 42 N. W. 576. In the last cited case, the following language appears in the syllabus: "3. A liberal construction is generally to be accorded to statutes regarded as humanitarian or grounded on a humane public policy. 4. Disqualifying provisions of such statutes must be narrowly construed." See *Phillips Co.* v. *Walling*, 324 U. S. 490, 65 S. Ct. 807, 89 L. Ed. 1095.

We are not unmindful that the unemployment compensation law is a tax statute in some aspects and should be applied strictly in favor of the tax payer, in this instance the employers. But, we think that the rule of strict application of tax statutes is modified to a certain extent, in the application of a humanitarian statute having for its object a beneficent and necessary public purpose, and amelioration of the rigors, hardships and evil consequences resulting from involuntary unemployment.

In accordance with the rules of application hereinabove stated, we hold that Sub-section 8, idem, is applicable to the cases here presented, and that such statutory provision partially supersedes the collective bargaining contract between the Laughlin, Knowles and Taylor Companies in the aspect here considered. If we had nothing more to consider in this case than the collective bargaining contract, it would seem that the employees of the three china companies gave their implied consent to a mass vacation at the option of the employer, which resulted in the closing of their respective plants. But, Sub-section 8, idem, having, to the extent here indicated, superseded those provisions of the contract, the right to unemployment compensation benefits allegedly due rests upon that statute. Hence, if the Laughlin Company and the Knowles

Company desired to fix a definite time for a mass vacation, the burden is on them to show that their employees agreed to such mass vacation, thereby becoming voluntarily unemployed and not entitled to unemployment compensation benefits.

The record does not show that the Laughlin and Knowles Companies had any agreement showing a request on the part of their employees for a mass vacation at a specified time. We therefore are of opinion that the employees of the Laughlin and Knowles Companies who received one weeks' pay and remained idle for the other week of the vacation, and those receiving no paid vacation, are entitled to compensation benefits, in accordance with the unemployment compensation law.

The Taylor Company however, is clearly within the provisions of Sub-section 8, idem, having been requested by the representatives of its employees to have a mass vacation at a specified time, which left the employer no alternative except to close the plant. The employees of that company were voluntarily idle and are not entitled to receive unemployment compensation benefits.

The case of *Golubski v. Unemployment Compensation Bd. of Rev.* (Pa. Superior Court) 91 A. 2d 315, throws some light on the question presented in the instant case. But that case is not in point; likewise *American Bridge Co. v. Review Board of Indiana, Etc.* (Ind.) 98 N. E. 2d 193, and *Renown Stove Co. v. Michigan Unemploy. Comp. Com'n.* (Mich.) 44 N. W. 2d 1. See Annotation 30 A.L.R. 2d, pages 366, 367, 374 and 376 et seq.

But in our view, we are controlled entirely by the applicable statutory provision. Sub-section 8, idem, authorizes the exclusion of employees who request a vacation at a specified time from receiving unemployment compensation benefits, on the ground they are voluntarily idle. The converse is true where a specific time and character of the vacation are not requested.

It is a reasonable inference that those employees who made no request as provided in Sub-section 8 idem, some

of whom received partial or no vacation pay and were rendered involuntary and partially unemployed by the closing of the plant of their employer, as result of a mass vacation fixed by the employer, are entitled to unemployment compensation benefits.

The Laughlin and Knowles Companies contend that even though their idled employees may be entitled to unemployment compensation benefits, the accounts of the Laughlin and Knowles Com;panies should not be charged with the payment of such benefits. We think this contention is untenable.

Chapter 135, Article 5, Section 7, Sub-paragraph 2, Acts of the Legislature, 1949, Regular Session, provides in part as follows: "Benefits paid to an eligible individual for total or partial unemployment occurring in any benefit year beginning after June thirty, one thousand nine hundred forty-nine, shall be charged to the account of the last employer with whom he has had as much as three weeks of continuous employment. * * *" The above quoted part of the statute is followed by a proviso which does not apply in this case.

The Laughlin and Knowles Companies rely upon Chapter 135, Article 1, Section 3, Sub-section 1, under the heading: "*Total and Partial Unemployment*", (Emphasis supplied) which reads in part as follows: "An individual shall be deemed totally unemployed in any week in which such individual is separated from employment for an employing unit and during which he performs no service and with respect to which no wages are payable to him.", and Sub-section 9, Section 4, Article 6, Chapter 135, Acts of the Legislature, 1949, Regular Session, reading in part as follows: "For the purposes of this section an employer's account shall not be charged under any of the following conditions: (1) When benefits are paid without any disqualification to an individual who has left his most recent work for good cause not involving fault on the part of the employer. * * * "

We note the definition of unemployment contained in Sub-section 2 of Section 3, Article 1, Chapter 135, idem, reading in part as follows: "An individual who has not been separated from employment shall be deemed to be partially unemployed in any week in which due to lack of work he performs no services and with respect to which no wages are payable to him, or in any week in which due to lack of full time work, wages payable to him are less than his weekly benefit week, plus six dollars."

A consideration of the record herein and the pertinent statutes, as above quoted, with respect to charging the accounts of employers, clearly shows that the claimants did not suffer total unemployment, but were partially and involuntarily unemployed. There is nothing to the contrary which shows that the claimants who were employees of the Laughlin and Knowles Company did not intend to return to their former employment after the respective plants resumed operations in July, 1949. They were therefore partially unemployed.

We reach the conclusion that the accounts of the Laughlin and Knowles Companies should be charged with the unemployment compensation benefits allowed to their qualified employees.

The employees of the Taylor Company, not being entitled to compensation benefits, the question of charging the account of that company does not arise.

Accordingly, the judgments of the Circuit Court of Kanawha County, awarding unemployment compensation benefits to the employees of the Laughlin and Knowles Companies, and denying unemployment compensation benefits to the Taylor Company employees, are affirmed.

*Affirmed.*

BROWNING, JUDGE, dissenting in part:

I am in agreement with the Court in this decision as it applies to the Homer Laughlin China Company em-

ployees and the Edwin M. Knowles China Company employees, but I respectfully dissent with regard to the holding as to the Taylor, Smith & Taylor Company employees. Prior to the enactment of Sub-section 8, Section 4, Article 6, Chapter 135, Acts of the Legislature, 1949, Regular Session, now Code, 21A-6-4(8), none of the employees involved in this litigation would have been entitled to unemployment compensation benefits under the *Paden City Pottery Company* case, decided on May 27, 1949, and the appellate court decisions upon which it was based. The specific purpose of the enactment of Subsection 8 by the Legislature, subsequent to the decision in the *Paden City Pottery Company* case, was to prevent the denial of unemployment compensation benefits to employees placed similarly to those in that case. The Legislature clearly and concisely provided that no employee would be denied unemployment compensation benefits as the result of his unemployment, due to the granting by his employer of a mass vacation, except that: "For each week in which he is unemployed because of his request, or that of his duly authorized agent, for a vacation period at a specified time that would leave the employer *no other alternative* but to suspend operations." (Italics supplied.)

The Taylor Company and others engaged in similar enterprises had theretofore formed an organization known as the United States Potters Association, and the industrial contract in question was national in scope, being negotiated between this organization and the International Brotherhood of Potters, to which union the employees of the Taylor plant belonged. The pertinent provisions, relating to vacations, were contained in the contract of all employers belonging to this association and read as follows: "The employer shall decide whether all vacations by all qualified employees shall be taken at one time or whether they shall be staggered over the agreed on vacation period." and "The vacation season shall begin June 1 and end December 31." The Taylor Company and its employees had operated under identical contract

provisions since the year 1944, and between that date and 1949, when this controversy arose, the employer had exercised its option under the contract to direct the taking of vacations in both of the alternatives provided, that is, on some occasions by staggered vacations, and in at least one instance by ordering a mass vacation.

The relevant facts were placed in the record by stipulation, which was apparently based upon a memorandum made by a representative of the employer at a meeting, held by representatives of the employer and certain employees which "constituted a part of the membership of the several shop committees", on May 23, 1949. The stipulation states that: "At that meeting it was concluded that there would be a vacation." We find only these further relevant event statements in the stipulation: "At that meeting it was concluded that there would be a vacation. The vacation period was set to begin upon July 4 and end on July 17. The meeting had taken place on May 23, and a memorandum of the meeting reflected the fact that a request that a specific time be set had been made by persons speaking for the employees." On May 29, 1949, a notice was posted on the bulletin board at the place of business of the employer, captioned NOTICE TO ALL EMPLOYEES VACATION PERIOD. The first paragraph of that notice says: "In accordance with the terms of our contract, operations will be suspended for two weeks commencing on Monday, July 4 and ending on Sunday, July 17, 1949."

The trial court in reviewing the facts as they have been stated above said: "As I see it, this was tantmount to a request for a vacation." I do not agree with that conclusion, nor with the statement contained in the majority opinion that: "The Taylor Company however, is clearly within the provisions of Sub-section 8, idem, having been requested by the representatives of its employees to have a mass vacation at a specified time, which left the employer no alternative except to close the plant.* * *" This employer, by the definite, concise and unambiguous provisions of its contract with the employees, had the choice

of granting a mass vacation or staggered vacation, and the right to fix the time at any period that it chose between June 1 and December 31.

The informal meeting held between certain employees, who apparently held minor positions in the local union of the plant, and the representatives of the employer, at which no demands were made on behalf of the employees, no threats of a strike or other action to force the employer to give up the alternative choices which he had by virtue of his contract, did not remove from the employer the alternative choices as to vacations which that contract had so clearly given it. There was no effort on the part of the employees of this plant to change or modify the provisions of the union contract, and the meeting on May 23 was nothing more than an informal session between employees and representatives of the employer for the purpose of fixing a vacation period, and the employer is to be commended for considering the wishes of his employees in that regard. However, if the employer chose to do so, it could have informed the shop committeemen that from the company's standpoint, it was desirable that staggered vacations be held during 1949 rather than a mass vacation, or that a mass vacation was to be held, but that it was not advantageous to the company to have the vacation period at a time desirable to the employees, and pointing to the explicit terms of its contract with the bargaining agent for those employees, they would have no recourse other than to accept the decision of the employer. It is true that once it was decided to have a mass vacation at a specified time that the employer was left with no alternative except to close the plant, but he had the alternative of directing that there be no mass vacation at all that year, and if its employees did not comply with the company's decision in that regard, it would have recourse to the laws of this State and to the National Labor Relations Act, usually known as the Taft-Hartley Law, if the employees of that plant had refused to comply with its directive, and thereby violated the provisions of the contract.

The record is vague as to exactly who made the request for a mass vacation, what authority they possessed to make such request, their authority to speak for all employees and whether any employee who now seeks unemployment compensation benefits appeared and joined in such request, thereby waiving his right to benefits. It is doubtful, but immaterial, whether the shop stewards had authority at the informal meeting on May 23 to speak for the employees of the plant who would be affected by the granting of a mass vacation, their "duly authorized agent", the International Brotherhood of Potters, having entered into a contract with the employer, regarding vacations upon which they could rely, and which contract did not confer any authority upon the shop committeemen to revoke or alter it in any manner. However, assuming authority in the committeemen, and that a request was made, the employer still had at least three *alternatives*: (1) It could have acceded to the request for a mass vacation and fixed the time as requested; (2) it could have refused the request and directed that the vacation be staggered over the period provided by the contract; or (3) it could have acceded to the request for a mass vacation, but selected a different time when it would occur.

I am in accord with the statements contained in the majority opinion to the effect that the unemployment compensation act is remedial in nature, that its beneficent provisions should be liberally applied, and that Sub-section 8, being an exclusionary provision which denies the payment of compensation to those voluntarily unemployed, should be strictly applied.

Applying these principles of law to the facts in this case, I would reverse the ruling of the Circuit Court of Kanawha County, wherein unemployment compensation benefits were denied to such employees of the Taylor Company, as were eligible therefor, as a result of the mass vacation called by the employer for the period of July 4 to July 17, 1949.