CHARLES KELLY ET AL. *v.* THE ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND BALDWIN, JS.

Argued January 3—decided March 7, 1950.

*James F. Rosen,* with whom was *Norman Zolot,* for the appellants (plaintiffs).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the appellee (defendant).

BALDWIN, J.   The plaintiffs in this case are employees of the High Standard Manufacturing Corporation, a subject employer under the Unemployment Compensation Act, and work in one of the corporation's plants on Dixwell Avenue in Hamden.   They seek to recover unemployment compensation for the work week in which July 4 fell, during which the employer shut down its plant in order, so it claimed, that the employees might have a vacation.

On January 5, 1948, the corporation entered into an agreement with a labor union representing the plaintiffs. This agreement contained the following provisions: "Article VI. Vacations.  Sec. 1. Employees on the payroll of the Company at the end of the last full calendar week in May and at the end of the last full calendar week in November will be entitled to a vacation with pay provided they were employed by the Company not later than the end of the previous period and remain employees until the qualifying dates above mentioned.  Sec. 2. The amount of vacation pay shall be 4% of the employees' gross earnings paid during the period following the end of the preceding vacation period with the exception that the payment to be made in June, 1948, shall be 4% of the gross earnings paid between December 16, 1947,

and the end of the last full calendar week of May, 1948. Payment will be made within 21 days after the close of each vacation period. Sec. 3. If the Company shall notify the Union by May 1, 1948, or of any subsequent year that it desires to shut down the plant for the week in which July 4 occurs, such week shall be deemed a week of vacation to apply against the half year in which it occurs. Sec. 4. Subject to Sec. 3 above, vacations will be taken at the time at which employees are entitled to vacation pay, subject to production requirements, and shall be arranged between the employee and his immediate supervisor in such way as shall be mutually satisfactory." The plaintiffs were all continuously in the employ of the corporation from sometime before the week ending November 29, 1947, until after November 30, 1948.

On April 27, 1948, the company gave notice that it had "decided to shutdown all plants of the Corporation at the end of the last shift on 2 July to the beginning of the first shift on 12 July 1948 in order that employees may have a week of vacation this summer. . . . Qualified employees will receive their vacation pay for the period 16 December 1947 to 30 May 1948 on 21 June 1948, computed on the basis of 4% of their gross earnings for this period. To qualify for vacation pay, an employee must have been an employee during the week ending November 30, 1947 and remained an employee until 30 May 1948."

On July 2, 1948, the plaintiffs were given unemployment notices. The reason set forth therein was that there would be a vacation shutdown for the work week in which July 4 fell. Each plaintiff received, on June 21, 1948, a check from the company for a sum figured at 4 per cent of his gross pay for the period between December 16, 1947, and the end of the last full calendar week of May, 1948, and, on December 20, 1948, a similar

check for the period between the end of the last full calendar week in May and the end of the last full calendar week in November, 1948. Each of these payments approximated $50, a sum in excess of the individual's weekly unemployment benefit rate. During the period July 2 to July 12, 1948, the plaintiffs registered for work at the state employment service and filed claims for unemployment benefits. In November, 1948, the administrator of the Unemployment Compensation Act disapproved the claims for the reason that the plaintiffs as employees had received vacation pay as compensation for loss of wages. General Statutes § 7508. The plaintiffs appealed from that ruling. The commissioner reversed the administrator and awarded unemployment benefits. From this ruling the company appealed to the Superior Court, which in turn reversed the commissioner. The plaintiffs have appealed to this court.

Benefits under the Unemployment Compensation Act are payable "only to individuals who are unemployed and are eligible for benefits." General Statutes § 7500; see §§ 7501, 7502. One may be in the employ of another even though for the time being one is on vacation. *Gutzwiller* v. *American Tobacco Co.*, 97 Vt. 281, 284, 122 A. 586; see *Dauber's Case*, 151 Pa. Super. 293, 296, 30 A. 2d 214. Webster's New International Dictionary (2d Ed.) defines vacation as "a time of respite. . . . A scheduled period during which activity or work is suspended; . . . In industry and business, etc., a period of exemption from work granted to each employee." In the case before us a vacation was provided for in the contract of employment between the union acting for the plaintiffs and the defendant employer. The employer had the power under the contract to designate the week in which July 4 fell as a vacation period and to shut down its plant and cease

work. The plaintiffs' term of service had not come to an end; activity had only been temporarily suspended. The plaintiffs had employment to which they could and did return on a day stated. July 4 fell on Sunday, and the period of shutdown covered the time from the end of the last shift on Friday, July 2, to the beginning of the first shift on Monday, July 12. The plaintiffs were not available for other employment because, normally, no one could be found to employ them for the balance of the week, considering the time it would take to process their registration for work for that week. It can hardly be said that they were in the labor market for so short a period. Under these circumstances, the plaintiffs were not "unemployed" within the intent and purpose of our statute. *Mattey Unemployment Compensation Case,* 164 Pa. Super. 36, 41, 63 A. 2d 429.

That aside, the rights of the plaintiffs are determined by the intent expressed in the contract read in the light of the statutes. Shorn of much of the verbiage, the provisions of the agreement can be reduced to this: Employees who have been continuously employed for the designated time are entitled, at the end of the periods fixed, to a vacation with pay; vacation pay is to be determined upon the basis stated; on notification, the company can shut down for the week in which July 4 occurs, and if it does that is a vacation period within the half year in which the week falls; and, with this exception, vacations are to be taken when employees become entitled to vacation pay and as may be arranged between them and the company. When the provisions of the contract are thus reduced to their bare essentials, it is perfectly clear that the extra compensation earned by continuous employment for the period prescribed is directly related to the vacation period. To be sure, the employee might, except for the forced vacation in July, decline any vacation or

might quit at the end of the period of continuous service required and still be entitled to the extra compensation; but this is a mere incident to the main intent expressed in the contract. The payments provided for were intended to be compensation for vacation periods. As such they were "payment by way of compensation for loss of wages" under General Statutes, § 7508. It is the plain intendment of that statute that, when there is an agreement in the contract of employment for a vacation and compensation is provided in an amount substantially equivalent to the pay an employee would have received for services rendered if he had actually worked, he is not eligible for unemployment benefits during the period of his vacation. 13164-Ohio R, Ben. Ser., Vol. 12/2; 12399-Vt. A, Ben. Ser., Vol. 11/4; *Hamlin* v. *Coolerator Co.*, 227 Minn. 437, 447, 35 N. W. 2d 616; see *American Central Mfg. Corporation* v. *Review Board*, (Ind. App.) 88 N. E. 2d 256; *Wellman* v. *Riley*, 95 N. H. 507, 67 A. 2d 428. The purpose of the act is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own, until he can find employment or for the period stated in the statute if he continues to be unemployed. *Waterbury Savings Bank* v. *Danaher*, 128 Conn. 78, 82, 20 A. 2d 455.

The act and the contracts made in contemplation of it must be construed to effect the humanitarian objectives of this legislation. *Harris* v. *Egan*, 135 Conn. 102, 105, 60 A. 2d 922; *Waterbury Savings Bank* v. *Danaher*, supra, 81. We cannot say here that to deny recovery defeats the humanitarian purposes of the act. Rather, to allow recovery would require stretching the interpretation of the act and the contract made by the parties themselves beyond what are their fair intent and purpose.

The plaintiffs assign error in the form of notice of

shutdown for the vacation period. Since they did not pursue this issue in their briefs or oral argument, we consider the assignment abandoned. Conn. App. Proc. § 165; *Connecticut Light & Power Co.* v. *McCarthy*, 95 Conn. 377, 388, 111 A. 365; *Eitingon* v. *Stamford*, 130 Conn. 418, 34 A. 2d 878.

There is no error.

In this opinion the other judges concurred.