RALPH SCHETTINO v. ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 74465

Memorandum filed January 17, 1951.

*Daniel Baker,* of Bridgeport, for the Plaintiff.

*Wiggin & Dana,* of New Haven, for American Steel & Wire Co.

*William L. Hadden,* Attorney General, and *Harry Silverstone,* Assistant Attorney General, of Hartford, for the Defendant.

ALCORN, J. The employer appeals from a decision of the unemployment commissioner awarding benefits, for the second week of a plant shutdown which the employer had designated as a vacation period, to one of its employees who was entitled to and received vacation pay for the first week of the shutdown period.

The employer is subject to the Unemployment Compensation Act. The employee belongs to a union which is the duly certified exclusive bargaining representative of all production and maintenance employees at the employer's New Haven plant. The employee's length of service with the employer was such that, by the terms of a contract entered into between the union and the employer, he was entitled to a one-week vacation with pay. The same contract also provided that the employer "retains the exclusive rights to manage the business and plants and to direct the working forces" including "the right to relieve employees from duty because of lack of work or for other legitimate reasons." The contract further provided that "the final right to allot vacation periods . . . is exclusively reserved to the Company," provided however, that in the absence of mutual agreement between the employer and the union vacations were to be scheduled "between May 1 and October 1 of each calendar year." Another provision in the same contract is "that a period of temporary shut down in any department for any reason between June 1 and October 1, unless other periods are mutually agreed upon, may be designated as comprising the vacation period for any employees of the department who are eligible for vacations."

The employer had 800 employees at its New Haven plant, of whom 80 per cent were eligible for a two-week vacation, 12.5 per cent were eligible for a three-week vacation, and 7.5 per cent were eligible for a one-week vacation. The union and the employer did not agree upon a vacation period. On April 28, 1949, the employer posted a notice to its employees that the plant would close for a two-week vacation period between 7 a. m. on July 30 and 7 a. m. on August 15 and indicated that construction work was to be performed during the shutdown period.

The employee received a full week's pay for the first week of the shutdown period. He was mentally and physically able to work during the second week of the shutdown period, duly filed a claim for unemployment benefits for that week, and returned to work for the employer when the plant reopened on August 15.

The commissioner concluded that the employee had fulfilled the eligibility conditions of General Statutes § 7507, and was not subject to any disqualification under § 7508. Among the benefit eligibility conditions under § 7507 only those need be

discussed which require that the employee be "(2) . . . available for work. . . ." and that "(4) he has been totally or partially unemployed . . . during his current benefit year for one week, . . . with respect to which he has received no benefits but during which he was eligible for benefits in all other respects and was not ineligible for benefits under any provision of section 7508. . . ." The pertinent portion of § 7508 for discussion is that which disqualifies an employee "(2) during the week in which, in the opinion of the administrator, he has (a) left work without sufficient cause connected with his employment. . . ."

The employer's reasons of appeal converge upon these provisions of the statutes, the argument being that the employee was not "available for work" because the shortness of the layoff rendered it impracticable for him to take other employment; that he was not "unemployed" during the vacation period; and that, the union being his authorized spokesman under the contract, he had voluntarily consented to the situation in which he found himself.

The weakness in the first proposition lies in its implicit assumption that to be "available for work" must necessarily mean available for some other work than the employer's. While the circumstances normally encountered have, in many cases, led to the necessity of considering the employee's availability for other work, no reason appears to make that an inevitable consideration. The purport of the commissioner's finding here is that this employee was available for his usual work for this employer, but the work was lacking. The commissioner properly concluded that he was available for work.

One may be in the employ of another even though for the time being one is on vacation. *Kelly* v. *Administrator,* 136 Conn. 482, 485. Consequently, if this employee had been eligible for a two-week vacation he would not have been unemployed for any of the plant shutdown period. He was, however, eligible for only one week's vacation. The action of the employer in declaring the two weeks a vacation period could not have the effect of extending this employee's vacation period, and the employer did not give it that effect by paying him for a two-week vacation. He was on vacation with pay during the first week, and was unemployed during the second week.

The employer has the support of decisions in other jurisdictions which have had occasion to consider the proposition that the unemployment was voluntary owing to the fact that it was contracted for by the union as the employee's bargaining agent. *Moen* v. *Director of the Division of Employment Security,* 324 Mass. 246; *In re Rakowski,* 276 App. Div. (N. Y.) 625; *Mattey* v.*Unemployment Compensation Board of Review,* 164 Pa. Super, 36; *In re Employees of Buffelen Lumber & Mfg. Co.,* 32 Wash. 2d 205. The rationale of the Massachusetts court is that the employee must take the burdens with the benefits of the contract made for him by the union, that the shutdown was by virtue of the contract, and that therefore his unemployment was voluntary and not compensable. The New York court reaches the same result upon the premise that the contract effected a voluntary temporary withdrawal by all the employees from the labor market. The reasoning of the Pennsylvania court is that the effect of the contract is as though the employee had personally requested time off for a vacation or other personal reasons, that he was not unemployed because a vacation implies continued employment, and the act does not contemplate a compensated vacation from work. The availability for work and the unemployed status of the employee in the present case have been considered above.

Variations in the wording of the pertinent statutes in these jurisdictions from the language of our own statutes need not now be discussed, although they necessarily affect the reasoning of decisions referred to. The test of "voluntary" leaving applied in those cases is not the entire test in this state. Our rule is that "one is not debarred from compensation because he has voluntarily left his employment unless the administrator shall be of the opinion that it was 'without sufficient cause connected with his employment.' " *Wyka* v. *Colt's Patent Fire Arms Mfg. Co.,* 129 Conn. 71, 73. "The purpose of the act is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own. . . ." *Kelly* v. *Administrator,* 136 Conn. 482, 487.

In a sense the reasoning in other jurisdictions may be said to bear upon the proposition, under the interpretation given our own statutes, that by virtue of the contract the employee is out of work through some "act of his own." That seems, however, to give a somewhat tortured interpretation to the contract made for him by the union. If it be reasoned that, through his union,

he contracted for a one-week vacation with pay, and also contracted for the employer to shut down the plant for any period it chose and call the shutdown a vacation, it does not necessarily follow that he contracted to accept any number of weeks at the employer's choosing without work and without compensation. It is not as reasonable to assume that to be the intention of the parties to the contract as it is to assume that, for any period beyond his stipulated vacation, the employee intended to be entitled to benefits under the unemployment compensation law.

Undeniably the work stoppage was permitted by the contract, and to that extent it can perhaps be said that an "act of his own" enabled the employer to close the plant. The act of closing and the decision as to its duration were the employer's acts, however. The employee is out of work because the employer chose, in this period, to provide no work for him. As the commissioner found, the employer "applied good economic reasoning" in closing the plant for a period during which it would have to pay 92.5 per cent of its employees anyway. The commissioner was justified in concluding as to the remaining 7.5 per cent, of which this employee was one, that the employee did not leave work without sufficient cause connected with his employment.

The view taken makes it unnecessary to consider the question whether the employee did, under the contract, or could, under the statute, § 7542, waive his right to benefits.

The appeal is dismissed.