121 Ind. App. 576 (1951)
98 N.E.2d 193
AMERICAN BRIDGE COMPANY
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION.
No. 18,147.
Court of Appeals of Indiana.
Filed April 16, 1951.
Rehearing denied May 25, 1951.
Transfer denied October 26, 1951.
*577 Paul R. Conaghan; Douglas F. Stevenson; Knapp, Cushing, Hershberger & Stevenson (of counsel), all of Chicago; and White, Raub, Craig & Forrey (of counsel), of Indianapolis, for appellant.
*578 J. Emmett McManamon, Attorney General; James A. Watson and Glen F. Kline, Deputy Attorneys General; and Arthur E. Letsinger, of Crown Point, for appellees.
BOWEN, P.J.
This is an appeal by the employer from a decision of the Review Board of the Indiana Employment Security Division holding that the appellees were eligible for benefits under the Indiana Employment Security Act. Burns' 1951 Replacement, § 52-1525, et seq. The appellees were employees of the American Bridge Company Plant in Gary, Indiana, and were all members of the bargaining unit for which the United Steelworkers of America, CIO, had been authorized to bargain.
By stipulation, the claimants and employer agreed that the claim of Frank Rempis would be representative of all claims, and that the decision on his claim would govern all other claims. The Review Board held that claimants were eligible for benefits during the two-week shutdown of the plant if they received no vacation pay, or for benefits during one week if they received vacation pay for one week, on the grounds that they were unemployed, and that their unemployment was not voluntary, and that they were available for work.
The assignments of error raise the question as to whether or not the finding of the Review Board that claimant was not voluntarily unemployed during the period in question is contrary to law; and that claimants were not available for work within the meaning of the act; and whether the evidence is insufficient to sustain the finding of the facts.
The facts in this case were stipulated by the parties, and the law is settled that where the facts are stipulated, *579 such stipulation of facts is binding and conclusive between the parties and upon the Review Board unless it is set aside or withdrawn. Schrieber v. Rickert (1943), 114 Ind. App. 55, 50 N.E.2d 879; Barker v. Reynolds (1932), 94 Ind. App. 29, 179 N.E. 396; Pettit v. Continental Baking Co. (1932), 94 Ind. App. 250, 180 N.E. 607.
It was stipulated and agreed by the parties that the employer, in accordance with § 11 (c) 2 of the bargaining agreement, exercised its right to close down the plant for two consecutive weeks for the purpose of taking inventory and granting vacations to those who were eligible. The evidence showed that at the time of the lay-off, the following notice was posted in the company plant:
"TO ALL EMPLOYEES:
"The Gary Plant of the American Bridge Company will shut down during the period from July 10 to July 23, 1950, inclusive, for the purpose of taking inventory.

"Insofar as possible, this period will be designated for vacations. Each employee will be contacted as to the scheduling of his vacation so that he may have ample opportunity to make arrangements. (Our italics.)
 "(signed) AMERICAN BRIDGE COMPANY"
The provisions of the union contract set forth in the stipulation of the parties, § 11 (c) 2 provided as follows:
"It is understood and agreed that a period of temporary shutdown in any department for any reason between May and October 1, unless other periods are mutually agreed upon, may be designated as comprising the vacation period for any employees of the department who are eligible for vacations."
*580 Appellee Rempis did not have sufficient seniority to be eligible for vacation with pay.
This is a case of first impression in this state. There are several cases in other jurisdictions cited by the appellant, holding that employees who were not entitled to vacation pay were ineligible for unemployment benefits during a vacation closing of the employer's plant; the facts of which decisions are clearly distinguishable from the case at bar. In the case of Kelly v. Administrator (1950), 136 Conn. 482, 72 A.2d 54, the facts were different from the facts of the instant case in that the company shut down the plant for the express purpose of a vacation period. The same situation is true with reference to the case of In re Buffelen Lumber & Mfg. Co. (1948), 32 Wash.2d 205, 201 P.2d 194. The company chose to shut down its plant to grant employees vacations. In the case of Claim of Rakowski (1950), 276 App. Div. 625, 97 N.Y.S.2d 309, the union made a request on behalf of the employees that the plant be closed for vacation purposes. In the case of Bedwell v. Review Board (1949), 119 Ind. App. 607, 88 N.E.2d 916, certain miners absented themselves from the employment although the employers kept the mines open for work in order to observe a memorial period called by the President of the United Mine Workers of America, and this court properly denied benefits during such period.
All of the foregoing cases are clearly distinguishable from the case at bar. In the instant case there is no question but that the shutdown occurred as a result of voluntary action of the company for the purpose of taking inventory, and as stated in the notice, insofar as possible, the period will be designated for vacations. By the use of the words "insofar as possible, this period will be designated for vacations" the company does not show a clear and *581 unequivocal intention to declare vacations for all. By reason of the terms of the employment contract with the union, such period could only be designated for employees of the plant who were eligible for vacations.
One of the conclusions reached by the Review Board was as follows:
"The Review Board further finds that the provisions of contract between the employer and United Steelworkers of America CIO specifically excludes the claimant from being considered on vacation during such period because it provides that the employer may, at its election, stagger the vacations for eligible employees during the calendar year or may close down its plant. In the latter event, such period would be considered a vacation for only those employees who were eligible for vacation. Since the contract specifically excluded the claimant in the event the employer closed for vacations and the employer could have granted the eligible employees their vacations without closing, the claimant, as a result of the union's agreement with the employer, was not on voluntary leave for vacation purposes and thus unavailable for work during the period involved herein."
In the opinion of this court, such statement is a proper interpretation to be placed as a matter of law upon the contract in question, upon the facts of this case, and the provisions of the Indiana Employment Security Act.
One of the express purposes of the Indiana Employment Security Act is to provide for employees who are unemployed through no fault of their own. There is nothing within the provisions of the union contract which would give rise, even inferentially, to a reasonable construction that employees who were not eligible for vacations were affected in any way by the designation of the vacation period for eligible employees. Certainly, the employees who were *582 not eligible for vacation have not by any reasonable interpretation to be placed upon the terms of § 11 (c) 2 of the bargaining agreement consented to any action by the company which would permit the designation of a period of vacation without pay for them. The agreement specifically says that such period of shutdown may be designated as comprising the vacation period for the employees of the department who are eligible for vacation.
We recognize that the Supreme Court of Massachusetts in the case of Moen v. Director of Division of Employment (1949), 324 Mass. 246, 85 N.E.2d 779, in passing upon a union agreement, which is practically identical to the one in the case at bar, reached a different result, and held that claimants were voluntarily unemployed by reason of the union agreement. In the Moen case, the Supreme Court of Massachusetts affirmed a decision of a district court which had affirmed a decision of the Review Board of the division of employment security. The company's plant was shut down to enable its employees to take their vacations.
In the case at bar, The Review Board had the right to adopt the reasonable inference that the shutdown of the American Bridge Company plant was for the purpose as stated in the notice of closing, "to take inventory," and under the union agreement and the notice the employer designated that insofar as possible the eligible employees would be required to take their vacations during such time. We cannot read anything else into the provisions of the union agreement and the circumstances disclosed in the instant case, nor can we substitute our judgment for that of the Review Board as to the facts concerning the voluntary action of the company in closing the plant to take inventory. We do not believe the reasoning contained in the Moen case, and similar cases from *583 other jurisdictions, is sound as applied to the facts of the instant case. Also, in comparing this Massachusetts case with the case at bar, we wish to point out that, such court stated in its opinion as follows: "... but it would not, as the claimant concedes, have been feasible for the company to offer employment to him during the shutdown." Certainly, such a statement could not be made concerning the employer in the case at bar, because the employer in its notice of the shutdown uses the words "insofar as possible, this period will be designated for vacations. Each employee will be contacted as to the scheduling of his vacation so that he may have ample opportunity to make arrangements." This statement itself in the notice is an equivocal statement of the company which does not show a desire to compel vacations for all employees under the union agreement, but only insofar as it was possible to do so and for those who were eligible.
Appellant advances the further argument that since the express purpose of the Employment Security Act is to avoid the serious menace of economic insecurity, that a vacation without pay is not economic insecurity within the compass of the legislative declaration of public policy. To the worker who depends upon his weekly paycheck for his daily bread, it would appear to be tortuous reasoning indeed to say that a vacation without pay does not constitute "economic insecurity."
This same section, § 52-1525, Burns' 1951 Replacement, in its declaration of public policy regarding such act, states:
"... Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment...."
*584 Since the "encouragement of desirable stable employment" is contained within the legislative declaration of policy and purpose of the Indiana Employment Security Act, it can hardly be seriously contended that the Legislature intended to adopt any doctrine of a necessity for permanent severance of the employment relation. In order to have stabilization of employment, both for industry and workers, the fact that a worker expects to resume his previous employment should and does not, under the Indiana Employment Security Act, constitute a bar to his being unemployed, under the act, and entitled to benefits if otherwise qualified.
For the reasons given herein, the decision of the Review Board is not contrary to law, and the appellees herein were unemployed within the meaning of the Indiana Employment Act; they were not voluntarily unemployed, and they are eligible for benefits as found by the Review Board. Finding no reversible error, the judgment and decision of the Review Board is affirmed.
Judge Royse dissents with opinion.
Judge Wiltrout dissents.
Judge Crumpacker concurs with opinion.
Judge Achor not participating.

CONCURRING OPINION
CRUMPACKER, J.
I concur in the court's opinion but believe it is unduly restricted to the particular facts here involved and places too much stress on the wording of the shutdown notice.
The decisions of foreign jurisdictions, upon which the appellant relies for reversal, although distinguishable on their facts from the present case, all seem to be predicated upon the proposition that when an employee *585 makes a contract with his employer out of which he acquires rights and receives benefits, he must be considered as voluntarily accepting any unfavorable consequences resulting from his employer's exercise of his rights under such contract. Thus if the employer finds it necessary to close his plant for the purpose of taking inventory and the contract provides that he may designate such shutdown period as a time during which employees who are entitled to vacations with pay must take them, employees who are not entitled to such vacations, but are nevertheless deprived of work by reason of such procedure, must be considered as having laid off voluntarily to take vacations without pay, and therefore are not entitled to unemployment compensation. This seems to me to be a harsh rule which sanctions the concept that the very purpose and spirit of our unemployment compensation statutes can be brought to naught by the negotiation of a contract by a labor union which may be the legal but unacceptable representative of many employees who voted against it as a bargaining agent.
The contract, without which there would be no basis for the appellant's position, makes no provision for vacations without pay. An employee must have worked for the appellant long enough to entitle him to a vacation with pay or he is entitled to none at all. Yet a vacation without pay, which the employee has no right to demand, can be forced upon him against his will through the device adopted by the appellant in the instant case. It seems to me that in this respect the contract, which makes the appellant's conduct permissible, lacks mutuality. The appellee, and those whom he represents, are either voluntarily on vacation without pay, in which event they are not entitled to unemployment compensation, or they are involuntarily out of work temporarily and are entitled to such *586 compensation if they ask for it and are genuinely attached to the labor market in the interim. It is difficult to understand why they should be considered as voluntarily on vacation without pay because of a contract which makes no provision for such vacations and the undisputed evidence discloses that they are off work against their will.
It is noteworthy that administrative boards, in jurisdictions where the decisions of the courts have not decreed otherwise, almost universally grant relief to claimants under circumstances similar to those presently considered. In at least one state where the principle upon which the appellant relies has been judicially announced, decisions so holding have been rendered obsolete by legislative enactment. It seems to me that the contract involved is a matter of legitimate judicial construction and legislative relief is not needed.

DISSENTING OPINION
ROYSE, J.
I do not agree with the majority opinion in this case. Every Appellate Tribunal in this country which has passed on the question presented here has reached an opposite conclusion. Appellees frankly admitted this in the oral argument of this case. They based their appeal for an affirmance on the fact that a majority of the Boards administering similar Acts had allowed compensation in this type of case. In my opinion the views of such administrative boards have little weight when they conflict with the sound logic and reasoning of the able and respectable courts which have passed on this matter.
It seems to me the majority by their opinion have completely ignored the plain language of the Legislature as to the guide which should be used in the construction *587 of our Indiana Employment Security Act. Article I of the Act being § 52-1525, Burns' 1951 Replacement, provides as follows:
"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state." (My emphasis)
Various terms in this provision have been construed by the Supreme Court and this Court. Walter Bledsoe Coal Co. et al. v. Review Board, etc. (1943), 221 Ind. 16, 20, 21, 46 N.E.2d 477; White v. Review Board of Indiana Employment Security Division (1944), 114 Ind. App. 383, 389, 52 N.E.2d 500; American Central Mfg. Corp. v. Review Board of Indiana Employment Security Division, et al. (1949), 119 Ind. App. 430, 435, 88 N.E.2d 256; Blakely et al. v. Review Board of Indiana Employment Security Division et al. (1950), 120 Ind. App. 257, 90 N.E.2d 353, 357 (Transfer denied).
I do not believe there is any basis in reason or logic for asserting that because the employees herein were not paid during this vacation period there would be *588 such a serious menace to the health, morale and welfare of the people that public order would be endangered. If this be true, under the positive mandate of the Legislature these employees were not entitled to the benefits provided by the Act.
I cannot agree with the majority that there is such a difference in the facts in this case and those in the cases of Kelly et al. v. Administrator, Unemployment Compensation Act, et al. (1950), 136 Conn. 482, 72 A.2d 54; In re Buffelen Lumber & Mfg. Co. et al. (1948), 32 Wash.2d 205, 201 P.2d 194; Claim of Rakowski (1950), 276 App. Div. 625, 97 N.Y.S.2d 309, as to overcome the clear logic of those cases.
In the Kelly case, supra, the Supreme Court of Connecticut said, in part:
"Benefits under the Unemployment Compensation Act are payable `only to individuals who are unemployed and are eligible for benefits.' ... One may be in the employ of another even though for the time being one is on vacation.... The employer had the power under the contract to designate the week in which July 4 fell as a vacation period and to shut down its plant and cease work. The plaintiffs' term of service had not come to an end; activity had only been temporarily suspended. The plaintiffs had employment to which they could and did return on a day stated. .. . The plaintiffs were not available for other employment because, normally, no one could be found to employ them for the balance of the week, considering the time it would take to process their registration for work for that week. It can hardly be said that they were in the labor market for so short a period."
It seems to me this reasoning is based on sound principles of judicial construction.
I agree the facts in the case of Bedwell et al. v. Review Board of the Indiana Employment Security Division *589 et al. (1949), 119 Ind. App. 607, 88 N.E.2d 916, are clearly distinguishable from those in this case.
As stated in the majority opinion, the case of Moen v. Director of Division of Employment (1949), 324 Mass. 246, 85 N.E.2d 779, is practically identical to this case. In my opinion the reasoning of that case demonstrates that there the Supreme Judicial Court of Massachusetts recognized it was the duty and function of courts to construe the law and not to legislate. In that case the Massachusetts court said:
"It is plain that the claimant's unemployment occurred as the result of a collective bargaining agreement between the company and a union of which the claimant was a member and which was the exclusive bargaining agency for those in the company's employ. Under this agreement employees who had been in the service of the company for the required period of time were to be given vacations with pay. In order that this might be done the agreement, as noted above, permitted the company to designate `a period of temporary shutdown in any department ... as comprising the vacation period for any employees of the department who are eligible for vacations.' To be sure the agreement grants vacations expressly only to those who are eligible and is silent as to employees such as the claimant whose period of employment makes them ineligible for vacations with pay. But it would not, as the claimant concedes, have been feasible for the company to offer employment to him during the shutdown. Thus as to him and employees similarly situated the shutdown was in effect a vacation without pay or a leave of absence, although not designated as such in the agreement. If that results in a hardship to the claimant it arises from the agreement rather than from a failure on the part of the company to provide work.

"It is apparent that the union had been designated, in accordance with the provisions of the National Labor Relations Act, as the exclusive *590 representative for all of the company's employees `for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.' U.S.C. (1946 ed.) Title 29, § 159 (a), 29 U.S.C.A. § 159 (a). The right of the claimant to deal with the company with respect to these matters was surrendered to the union. The union had become the exclusive representative of all the employees of the company for the purposes of collective bargaining. (Authorities). The claimant was bound by the agreement made on his behalf by the union to the same extent as though he had entered into it individually. He is entitled to its benefits and must accept its burdens. The claimant speaking through the union had agreed that the plant might be shut down in order that vacations could be had by the company's employees. It cannot be said that his unemployment for that period was other than voluntary. Unemployment which is voluntary is not compensable under the employment security law. The purpose of that law is to provide compensation for those who `are thrown out of work through no fault of their own.' (Authorities) The fact that the statute expressly provides that one who receives vacation allowances shall not be eligible for unemployment benefits, § 25(d) (2), does not in our opinion evince a legislative intent to compensate for time off of the sort obtaining here. It is to be noted that that statute also provides that no benefits shall be paid for `The period of unemployment next ensuing after an individual has left his employment; (1) Voluntarily without good cause attributable to the employing unit or its agent.'" (My emphasis).
It is true that since that decision the legislature of Massachusetts has amended the law to make such persons eligible for benefits. Certainly this was a proper legislative function. This is the nub of my disagreement with the majority opinion. It seems crystal clear to me that our Legislature has determined that these employees were not entitled to the benfits of the *591 Act. But the majority has laid aside its judicial function and usurped the prerogative of the Legislative Department of our state government to grant them the benefits of the Act.
In the case of Mattey v. Unemployment Compensation Board of Review (1949), 164 Pa. Super. 36, 42, 63 A.2d 429, 431, 432, the facts were analogous to those in this case. In denying benefits to the claimants, the Supreme Court of Pennsylvania said, in part:
"The purpose of the Unemployment Compensation Law has been set forth in the declaration of public policy in section 3 of the Act of December 5, 1936, 2d Ex. Sess., P.L. (1937) 2897, 43 P.S. § 752, and reference has been made thereto in numerous decisions of the appellate courts. The unemployment compensation reserves established thereunder should be used for the payment of benefits to those who come within the objective of the Act. Payments must be made in accordance with its avowed purposes, and the Act must be given a realistic interpretation. The Act does not contemplate `a compensated vacation from work' (Brilhart Unemployment Compensation Case (Department of Labor and Industry et al. v. Unemployment Compensation Board of Review), 159 Pa. Super. 567, 569, 49 A.2d 260, 262), nor should it become `an invitation to a compensated rest.'"
Finally, the majority opinion, in rejecting appellant's contention that a vacation without pay does not produce economic insecurity within the compass of the legislative declaration of public policy, says:
"To the worker who depends upon his weekly paycheck for his daily bread, it would appear to be tortuous reasoning indeed to say that a vacation without pay does not constitute `economic insecurity.'"
I have never felt that the reaction of a litigant should affect our construction of a statute.
*592 For reasons herein stated, I believe the judgment should be reversed.
NOTE.  Reported in 98 N.E.2d 193.