# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**C. RICHARD MARTIN**
Martin & Martin
Boonville, Indiana

ATTORNEYS FOR APPELLEES,
Review Board and The Department
of Workforce Development

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES BROXTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1301-EX-79 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, THE DEPARTMENT OF | ) | |
| INDIANA WORKFORCE DEVELOPMENT, AND | ) | |
| SODEXO, | ) | |
| | ) | |
| Appellees. | ) | |

FILED

Jan 09 2014, 10:15 am

CLERK
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT
OF WORKFORCE DEVELOPMENT
Cause No. 12-R-3680

**January 9, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

James Broxton appeals the denial of his request for unemployment benefits by the Review Board of the Department of Workforce Development ("Review Board"). We affirm.

## Issues

Broxton raises five issues, which we restate as:

I. whether the Review Board properly determined that his employer was not required to give notice under Indiana Code Section 22-4-3-5(c);

II. whether the Review Board properly denied unemployment benefits to him pursuant to Indiana Code Section 22-4-3-5;

III. whether the Review Board properly determined that he was not regularly and customarily employed on an "on call" or "as needed basis" under Indiana Code Section 22-4-3-3;

IV. whether the Review Board's interpretation of Indiana Code Section 22-4-3-5 conflicts with other statutory provisions of the Indiana Employment Security Act (the "Act"), Indiana Code Article 22-4; and

V. whether the Review Board's interpretation of Indiana Code Section 22-4-3-5 violates the policy behind the Act.

## Facts

Broxton has been employed by SDH Education Service West, LLC, also known as Sodexo Food Services ("Sodexo"), since 2008 as a cook at St. Joseph's College in Rensselaer. From August through May, Broxton works full time. During the summer months, he is only "on call." Appellant's App. p. 13. He is required to call Sodexo each

2

Tuesday to find out if work is available. If he fails to call in, Broxton could lose his job. In 2012, Broxton was on call from May 7th to August 18th, but he was never called in to work.

In prior summers, Broxton received unemployment insurance benefits. Broxton filed a claim for unemployment benefits, and on August 13, 2012, a claims deputy concluded that Broxton was not entitled to unemployment benefits because he "was on a vacation week mandated by the employer." Id. at 20. Broxton appealed that determination to an administrative law judge ("ALJ"), and Sodexo did not participate in the appeal. After a hearing, the ALJ concluded:

> Although the Claimant is on an on-call or as needed basis with the Employer during summer break every year, the period is a reduction in hours that regularly occurs as "a matter of practice, policy or procedure of which the Claimant was aware and to which the Claimant has agreed," 646 IAC 5-8-1 (2011). Alternatively, the time is also a scheduled period during which activity is suspended, or a vacation, that is part of the Employer's regular policy or practice and the Claimant has reasonable assurance of employment when the period ends. The Claimant is ineligible for benefits based on [his] employment status with this Employer during the summer break period.

Id. at 38. Thus, the ALJ affirmed the claims deputy's determination that Broxton was ineligible for unemployment benefits.

Broxton appealed the ALJ's determination to the Review Board. There was no hearing before the Review Board, and no additional evidence was admitted. The Review Board adopted the ALJ's findings of fact but struck the ALJ's conclusions of law and concluded that Broxton was "not partially or part-totally unemployed" because he

3

"agreed to perform services for the Employer during the school year," he was aware of the summer break, and he "agreed to this reduction or suspension of work hours during scheduled breaks through continued employment with the Employer." Appellee's App. p. 2.

The Review Board also concluded that Broxton was not entitled to benefits due to Indiana Code Section 22-4-3-5, which denies unemployment benefits to certain employees on "a vacation week" without remuneration pursuant to a contract or regular policy. Although the Review Board noted that Indiana Code Section 22-4-3-5 was inapplicable if an employer "fails to comply with a department rule or policy regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period," the Review Board also noted that the "Department currently has no rules or policies requiring employers to file a notice regarding a claim arising out of a vacation period, nor is the Department statutorily required to enact a policy on this matter." Id. at 3 (discussing Ind. Code § 22-4-3-5(c)). The Review Board held that the term "vacation week" referenced "an employer-mandated period in which work is not performed." Id. Further, the Review Board concluded that, "[b]ecause [Broxton] was on an unpaid vacation period and had reasonable assurance of employment following the summer break, [Broxton] was not totally, part-totally, or partially unemployed." Id. at 4.

The Review Board also concluded that Broxton was "voluntarily unemployed during the summer break" due to his "assent" to Sodexo's practices. Id. at 5. Thus, the

4

Review Board found that Broxton was not eligible for unemployment benefits. Broxton now appeals.

At the Review Board's request, in May 2013, this appeal was consolidated with numerous other appeals raising similar issues based on the Review Board's interpretation of Indiana Code Section 22-4-3-5. In June 2013, after a pre-appeal conference, this appeal and two other appeals, D.B. v. Review Board of the Ind. Dep't of Workforce Dev., No. 93A02-1301-EX-71, and Amerson v. Review Board of the Ind. Dep't of Workforce Dev., No. 93A02-1301-EX-67, were designated as "test cases" and allowed to proceed. The remaining appeals were held in abeyance pending completion of the test cases. On November 5, 2013, a panel of this court affirmed the denial of unemployment benefits in D.B., __ N.E.2d __, No. 93A02-1301-EX-71 (Ind. Ct. App. Nov. 5, 2013), and on November 26, 2013, another panel of this court affirmed the denial of unemployment benefits in Amerson, No. 93A02-1301-EX-67 (Ind. Ct. App. Nov. 26, 2013).

**Analysis**

Broxton argues that the Review Board erred when it denied his request for unemployment benefits. On appeal, we review the Review Board's (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. McClain v. Review Bd. of Indiana Dep't of Workforce Dev., 693 N.E.2d 1314, 1317 (Ind. 1998). The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review. Id. In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Review Board's findings.

5

Id. Reversal is warranted only if there is no substantial evidence to support the Review Board's findings. Id. (citing KBI, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev., 656 N.E.2d 842, 846 (Ind. Ct. App. 1995)). Next, the Review Board's determinations of ultimate facts, which involve an inference or deduction based upon the findings of basic fact, are generally reviewed to ensure that the Review Board's inference is reasonable. Id. at 1317-18. Finally, we review conclusions of law to determine whether the Review Board correctly interpreted and applied the law. McHugh v. Review Bd. of Indiana Dep't of Workforce Dev., 842 N.E.2d 436, 440 (Ind. Ct. App. 2006).

When interpreting a statute, we will give great weight to an interpretation of the statute by an administrative agency charged with enforcing the statute, unless such interpretation would be inconsistent with the statute itself. State Bd. of Tax Comm'rs v. Two Market Square Assocs. Ltd. P'ship, 679 N.E.2d 882, 886 (Ind. 1997). This same rule of deference applies to agency interpretation of administrative regulations that it has drafted and is charged with enforcing. Id. "Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation." South Bend Cmty. Sch. Corp. v. Lucas, 881 N.E.2d 30, 32 (Ind. Ct. App. 2008). When faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, we defer to the agency. Id. If we determine that an agency's interpretation is reasonable, we terminate our analysis and will not address the reasonableness of the other party's proposed interpretation. Id. "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and

6

increasing public reliance on agency interpretations.'" Id. (quoting State v. Young, 855

N.E.2d 329, 335 (Ind. Ct. App. 2006)).

### I. Notice Requirement under Ind. Code § 22-4-3-5

Broxton first argues that the Review Board erred when it interpreted the notice

provisions of Indiana Code Section 22-4-3-5. That statute provides:

> (a) Except as provided in subsection (c) and subject to subsection (b), an individual is not totally unemployed, part-totally unemployed, or partially unemployed for any week in which the department finds the individual:
>
> > (1) is on a vacation week; and
> >
> > (2) has not received remuneration from the employer for that week, because of:
> >
> > > (A) a written contract between the employer and the employees; or
> > >
> > > (B) the employer's regular vacation policy and practice.
>
> (b) Subsection (a) applies only if the department finds that the individual has a reasonable assurance that the individual will have employment available with the employer after the vacation period ends.
>
> (c) Subsection (a) does not apply to an individual whose employer fails to comply with a department rule or policy regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period.

Ind. Code § 22-4-3-5.[1]

The Department of Workforce Development ("Department") issued a policy regarding Indiana Code Section 22-4-3-5 on February 3, 2012. See Appellant's App. p. 39; DWD Policy 2011-07, Planned Shutdown Effects upon Unemployment Insurance Benefits ("Policy"). In the Policy, the Department determined that it would consider several factors when deciding whether a mandated or planned facility shutdown would be considered a vacation week. One of the factors is whether "the employer, on their own initiative, has provided the Department with advance notice of any vacation week or

_____

[1] Indiana Code Section 22-4-3-5 was added in 2011 by Pub. L. No. 2-2011, § 3, effective July 1, 2011, and was amended by Pub. L. No. 6-2012, § 162, effective February 22, 2012. The statute previously provided:

| (a) | | An individual is not totally unemployed, part-totally unemployed, or partially unemployed for any week in which the department finds the individual: |
| --- | --- | --- |
| | (1) | is on a vacation week; and |
| | (2) | has not received remuneration from the employer for that week, because of: |

| | | (A) | a written contract between the employer and the employees; or |
| --- | --- | --- | --- |
| | | (B) | the employer's regular vacation policy and practice. |

| (b) | | Subsection (a) applies only if the department finds that the individual has a reasonable assurance that the individual will have employment available with the employer after the vacation period ends. |
| --- | --- | --- |
| (c) | | Subsection (a) does not apply to an individual whose employer fails to comply with a department rule or policy regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period. |

8

shutdown period." Appellant's App. p. 41. The Department did not issue a rule or policy that required an employer to file "a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period." I.C. § 22-4-3-5(c).

On appeal, Broxton argues that the Department is "attempting to render subsection (c) a nullity by not requiring such notice prior to applying subsection (a)."[2] Appellant's Br. p. 8. Despite Broxton's arguments, we conclude that subsection (c) of the statute does not mandate that an employer file a notice in the event of a "separation arising from the vacation period."

The relevant portion of the statute provides: "Subsection (a) does not apply to an individual whose employer fails to comply with a department rule or policy regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period." I.C. § 22-4-3-5(c). The statute gives the Department discretion to create a "department rule or policy" regarding such a notice. See also I.C. § 22-4-19-1 ("The board shall have the power and authority to adopt, amend, or rescind such rules and regulations . . . and take such other action as it may deem necessary or suitable for the proper administration of this article."). The statute

---

[2] The Review Board argues that Broxton waived this argument by failing to raise it below. The issue of whether Broxton received adequate notice involves a legal, not a factual conclusion. We have previously declined to find waiver of an issue not raised in an administrative proceeding where resolution of the issue did not require any factual determinations, and required only legal conclusions. See Tokheim Corp. v. Review Bd. of Ind. Employment Sec. Div., 440 N.E.2d 1141, 1142 (Ind. Ct. App. 1982); cf. Highland Town Sch. Corp. v. Review Bd. of Indiana Dep't of Workforce Dev., 892 N.E.2d 652, 656 (Ind. Ct. App. 2008) ("The ALJ is not required to brainstorm about every possible legal theory that might be available to a pro se claimant."). The arguments on appeal concern the interpretation of statutes, which are legal conclusions. Consequently, we will address Broxton's argument on the merits.

9

does not specifically require an employer to provide such a notice. If the legislature had intended to require such a notice, it could have provided so in the statute. Instead, the statute merely requires an employer to comply with the Department's rule or policy; it does not specify the content of the rule or policy. Given the Department's substantial discretion, we conclude that Broxton's argument regarding the notice provisions of Indiana Code Section 22-4-3-5(c) fails.

## II. Denial of Benefits under Ind. Code § 22-4-3-5

Next, Broxton argues that the Review Board erred when it concluded that he was on a "vacation" under Indiana Code Section 22-4-3-5 during the summer of 2012. Indiana Code Section 22-4-3-5 disqualifies an individual from receiving unemployment benefits if: (1) the individual "is on a vacation week"; (2) the individual "has not received remuneration from the employer for that week, because of: (A) a written contract between the employer and the employees; or (B) the employer's regular vacation policy and practice;" and (3) the Department "finds that the individual has a reasonable assurance that the individual will have employment available with the employer after the vacation period ends."

Broxton argues that he was not on a "vacation" during the summer of 2012. In support of his argument, Broxton relies on American Bridge Co. v. Review Bd. of Ind. Employment Sec. Division, 121 Ind. App. 576, 98 N.E.2d 193 (1951), and Indiana State University v. LaFief, 888 N.E.2d 184 (Ind. 2008). We do not find that either case is controlling here.

10

In American Bridge, this court held that employees subject to a company shutdown for the purpose of taking inventory were entitled to unemployment benefits. American Bridge, 121 Ind. App. at 578-84, 98 N.E.2d at 194-96. However, our supreme court distinguished American Bridge in Adams v. Review Bd. of Ind. Employment Sec. Division, 237 Ind. 63, 143 N.E.2d 564 (1957). In Adams, the employees were subject to a shutdown for a vacation period covered by a collective bargaining agreement. The court pointed out that the shutdown in American Bridge was distinguishable because it was for inventory purposes rather than vacation purposes. Adams, 237 Ind. at 71, 143 N.E.2d at 568. Similarly, American Bridge is not persuasive because the "vacation" at issue here is more similar to that in Adams than the temporary shutdown for inventory purposes in American Bridge.

In LaFief, our supreme court held that an assistant professor who was notified that his one-year contract would not be renewed was entitled to unemployment benefits. LaFief, 888 N.E.2d at 185. However, the facts in LaFief are not comparable to the facts here. In fact, the court in LaFief noted:

> This holding does not alter the general rule that employees who contractually agree to mandatory vacation periods or temporary shut downs are not eligible for unemployment benefits so long as they have reasonable assurance that they will continue to be employed after the mandatory vacation period or temporary shut down ends. See Ind. Code Ann. § 22-4-14-7(a) (individuals employed by educational institutions are not entitled to unemployment benefits during the period between two successive academic years if they were employed during one period and there is a reasonable assurance that they will be employed during the successive term); Ind. Code Ann. § 22-4-14-8 (individuals whose employment consists of participating in sports are not entitled

11

> to unemployment benefits between seasons if they were employed during one season and there is a reasonable assurance that they will be employed during the successive season); Pope v. Wabash Valley Human Serv., Inc., 500 N.E.2d 209, 211 (Ind. Ct. App. 1986) ("Where the employment contract or collective bargaining agreement provides for a shutdown or vacation period, the employees who signed or assented to the contract are not 'unemployed' within the meaning contemplated by the [Unemployment Compensation Act]").

LaFief, 888 N.E.2d at 187.[3]

The Legislature has not defined "vacation" in the context of unemployment insurance benefits, and the Review Board found that the term "vacation" as used in Indiana Code Section 22-4-3-5 was ambiguous. The Review Board pointed out that Indiana Code Section 22-4-3-5 required reasonable assurance of employment after the vacation, which would not normally be required by an employee taking a traditional vacation for leisure or pleasure. Thus, the Review Board determined that the traditional definition of "vacation" was inapplicable and that Indiana Code Section 22-4-3-5 must concern "an employer-mandated period in which work is not performed." Appellant's App. p. 4. Given the great weight we must give to an interpretation of a statute by an administrative agency charged with enforcing the statute, we cannot say that the Review Board's interpretation of the term "vacation" in Indiana Code Section 22-4-3-5 is unreasonable. See Two Market Square Assocs. Ltd. P'ship, 679 N.E.2d at 886 ("When

---

[3] We also note that LaFief was decided in 2008, prior to the enactment of Indiana Code Section 22-4-3-5. Some of the language of Indiana Code Section 22-4-3-5 is similar to the language found in LaFief. Compare LaFief, 888 N.E.2d at 187 ("[E]mployees who contractually agree to mandatory vacation periods or temporary shut downs are not eligible for unemployment benefits so long as they have reasonable assurance that they will continue to be employed after the mandatory vacation period or temporary shut down ends."); with I.C. § 22-4-3-5.

the meaning of an administrative regulation is in question, the interpretation of the administrative agency is given great weight unless the agency's interpretation would be inconsistent with the regulation itself.").

With the Review Board's interpretation of the term "vacation" in mind, we must determine whether Broxton was properly denied benefits pursuant to Indiana Code Section 22-4-3-5. The Department has determined that it will consider several factors in determining whether an employee is on a vacation week under Indiana Code Section 22-4-3-5, including:

1. Whether a written contract between the employer and the employee provides for a paid or unpaid vacation week designation;

2. Whether a vacation week was the result of an employer's regular vacation policy and practice;

3. Whether an employer provided a reasonable assurance to the employee that they would have employment available with the employer after the vacation period ends. Such an assurance is not required to be provided by explicit declaration or direct communication but may be inferred by past employer or employee conduct, policy, practice, or custom, such that the employee knew or should have known of their employment availability. Additionally, such an assurance shall provide more than a speculative date of return to employment in order to be reasonable;

4. Whether, as part of the above-mentioned reasonable assurance, an employer gave reasonable notice to the employee concerning the vacation week or facility shutdown. Such notice is not required to be provided by explicit declaration or direct communication, but may be inferred by past employer or employee conduct, policy, practice or custom, such that the

13

employee knew or should have known of the vacation week or mandated facility shutdown;

5.     Whether the employer, on their own initiative, has provided the Department with advance notice of any vacation week or shutdown period.

Appellant's App. pp. 40-41. This list of factors is "not exclusive," and the Department makes determinations on such "vacation" issues "on a case-by-case basis." Id. at 41.

Here, Broxton states that he was employed "under a labor agreement," but there is no evidence of such agreement in the record. Appellant's Br. p. 12 n.10. During the college's summer break, it was Sodexo's regular practice to reduce its services because of the lack of students. Broxton regularly does not work and is unpaid from May to August, except that he is "on call" and must call Sodexo each Tuesday to see if work is available. Tr. p. 4. Broxton had worked for Sodexo since 2008 and was clearly aware of the summer "vacation" practice and had reasonable assurances that he would return to employment in August when the students returned. The Review Board applied the relevant factors and concluded that, under Indiana Code Section 22-4-3-5, Broxton was not totally, part-totally, or partially unemployed.

The Review Board's determination that Broxton was on an unpaid "vacation week" because of Sodexo's regular vacation policy and practice and had a reasonable assurance of employment after the vacation period ended is reasonable. Based on the factors set out by the Department, we cannot say that the Review Board erred when it determined that Broxton was ineligible for unemployment benefits due to Indiana Code Section 22-4-3-5.

14

### III. On Call

Next, Broxton argues that he was totally unemployed because no "on call" work was available to him during the summer of 2012. In support of his argument, he relies on Indiana Code Section 22-4-3-3, which provides:

> An individual is not totally unemployed, part-totally unemployed, or partially unemployed for any week in which the individual:
>
> (1) is regularly and customarily employed on an on call or as needed basis; and
>
> (2) has:
>
> (A) remuneration for personal services payable to the individual; or
>
> (B) work available from the individual's on-call or as needed employer.

The Review Board held that this statutory provision was inapplicable because Broxton was "not regularly and customarily employed on an 'on call' or 'as needed' basis." Appellant's App. pp. 3-4.

Indiana Code Section 22-4-3-3 provides an exception to the definition of totally unemployed, part-totally unemployed, or partially unemployed. If the employee falls under the exception, he or she is not entitled to unemployment benefits. Because the Review Board found that Indiana Code Section 22-4-3-3 was inapplicable, it did not use this statutory provision to deny unemployment benefits to Broxton. On appeal, the Review Board argues that "although Broxton is ineligible for unemployment compensation benefits based on other statutory sections, any claims or arguments made

by Broxton based on Section 22-4-3-3 need not be addressed because they are immaterial to whether . . . Broxton was properly denied benefits." Appellee's Br. p. 24. We agree with the Review Board. Because we have determined that the Review Board properly denied Broxton benefits under Indiana Code Section 22-4-3-5, we need not address this argument.

## IV. Inconsistent with Other Provisions

Next, Broxton argues that the Review Board's decision is inconsistent with other provisions of the Act. Specifically, Broxton argues that the Review Board's application of Indiana Code Section 22-4-3-5 conflicts with: (1) the eligibility provisions of the Act; (2) the Act's seasonal work provision found at Indiana Code Section 22-4-14-11; (3) provisions that "focus on claims by unemployed individuals with respect to specific weeks of unemployment;" and (4) the notice provision of Indiana Code Section 22-4-3-5. Appellant's Br. p. 20.

We have already held that the Review Board's interpretation of Indiana Code Section 22-4-3-5's notice provisions is reasonable. Broxton admits that the seasonal worker provisions do not apply to him. As such, we fail to understand how the seasonal worker provisions conflict with the Review Board's interpretation. As for the remaining arguments, Broxton offers neither cogent arguments nor citations to relevant authority in support of these assertions; the arguments are therefore waived. Doughty v. Review Bd. of Dep't of Workforce Dev., 784 N.E.2d 524, 527 (Ind. Ct. App. 2003).

## V. Purpose of the Act

16

Finally, Broxton argues that the Review Board's interpretation of Indiana Code Section 22-4-3-5 conflicts with the purpose of the Act. The Act provides:

> As a guide to the interpretation and application of this article, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale, and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this article to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for integrated employment and training services in support of state economic development programs, and to provide maximum job training and employment opportunities for the unemployed, underemployed, the economically disadvantaged, dislocated workers, and others with substantial barriers to employment, is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state. To further this public policy, the state, through its department of workforce development, will maintain close coordination among all federal, state, and local agencies whose mission affects the employment or employability of the unemployed and underemployed.

I.C. § 22-4-1-1. The Act is "given a liberal construction in favor of employees because it is social legislation meriting such construction in order to promote its underlying humanitarian purposes." Scott v. Review Bd. of Indiana Dep't of Workforce Dev., 725 N.E.2d 993, 996 (Ind. Ct. App. 2000).

According to Broxton, the Review Board's interpretation conflicts with the purpose of the Act to provide unemployment benefits to those workers involuntarily

17

unemployed. Broxton argues that his summer unemployment is not voluntary and occurs through no fault of his own. Although we acknowledge the general policy behind the Act and sympathize with the hardship that Broxton and similarly situated employees suffer, we must also acknowledge the Review Board's argument that its "interpretation of this statute prevents employers from using unemployment benefits to subsidize employees who have a reasonable assurance of returning to work after a regularly scheduled vacation break." Appellee's Br. p. 9. We simply cannot say that the Review Board's interpretation of the relevant statutes is unreasonable.

## Conclusion

We cannot say that the Review Board erred when it denied unemployment benefits to Broxton pursuant to the provisions of Indiana Code Section 22-4-3-5. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.